# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Residential Funding Company, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Academy Mortgage Corporation, <br><br> Defendant. | Case No. 13-cv-3451 (SRN/JSM) |
| Residential Funding Company, LLC, <br><br> Plaintiff, <br><br> v. <br><br> First California Mortgage Company, <br><br> Defendant. | Case No. 13-cv-3453 (SRN/JJK) |
| Residential Funding Company, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Provident Funding Associates, L.P., <br><br> Defendant. | Case No. 13-cv-3485 (SRN/TNL) |

| | |
|---|---|
| Residential Funding Company, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>T.J. Financial, Inc.,<br><br>       Defendant. | Case No. 13-cv-3515 (SRN/SER) |
| Residential Funding Company, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Universal American Mortgage Company, LLC,<br><br>       Defendant. | Case No. 13-cv-3519 (SRN/JSM) |
| Residential Funding Company, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Wells Fargo Financial Retail Credit, Inc. f/k/a Norwest Financial Acceptance, Inc.,<br><br>       Defendant. | Case No. 13-cv-3525 (SRN/JSM) |

Donald G. Heeman, David L. Hashmall, and Jessica J. Nelson, Felhaber Larson, 220 South Sixth St., Suite 2200, Minneapolis, MN 55402; Edward P. Sheu and Kyle R. Hardwick, Best & Flannagan LLP, 225 South Sixth St., Suite 4000, Minneapolis, MN 55402; Peter E. Calamari, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor, New York, NY 10010; and Jeffrey A. Lipps, Carpenter Lipps & Leland LLP, 280 Plaza, Suite 1300, 280 North High St., Columbus, OH 43215, for Plaintiff.

David M. Souders and Tessa K. Somers, Weiner Brodsky Kider PC, 1300 19th St., NW, Fifth Floor, Washington, D.C. 20036, for Defendant Academy Mortgage Corporation.

J. Robert Keena and Carol R. M. Moss, Hellmuth & Johnson, PLLC, 8050 West 78th St., Edina, MN 55439; and James W. Brody and Greg W. Chambers, 75 Rowland Way, Suite 350, Novato, CA 94945, for Defendant First California Mortgage Company.

Mark G. Schroeder and Daniel N. Moak, Briggs and Morgan, P.A., 2200 IDS Center, 80 South Eighth St., Minneapolis, MN 55402; and Neil R. O'Hanlon, Hogan Lovells US LLP, Suite 1400, 1999 Avenue of the Stars, Los Angeles, CA 90067, for Defendant Provident Funding Associates, L.P.

Erin Sindberg Porter and Janine W. Kimble, Greene Espel PLLP, 222 South Ninth St., Suite 2200, Minneapolis, MN 55402; and Philip R. Stein and Shalia Sakona, Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Ave., 23rd Floor, Miami, FL 33131, for Defendant T.J. Financial, Inc.

Erin Sindberg Porter and Janine W. Kimble, Greene Espel PLLP, 222 South Ninth St., Suite 2200, Minneapolis, MN 55402; and Philip R. Stein and Shalia Sakona, Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Ave., 23rd Floor, Miami, FL 33131, for Defendant Universal American Mortgage Company, LLC.

Marc T. G. Dworsky, Richard C. St. John, and Todd J. Rosen, Munger, Tolles & Olson LLP, 355 South Grand Ave., 35th Floor, Los Angeles, CA 90071; Christian K. Wrede, Munger, Tolles & Olson LLP, 560 Mission St., 27th Floor, San Francisco, CA 94105; and Richard T. Thomson and Amy L. Schwartz, Lapp, Libra, Thomson, Stoebner & Pusch, Chtd., 120 South Sixth St., Suite 2500, Minneapolis, MN 55402, for Defendant Wells Fargo Financial Retail Credit, Inc. f/k/a Norwest Financial Acceptance, Inc.

---

## MEMORANDUM OPINION AND ORDER

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on a Motion to Dismiss the First Amended Complaint filed by each Defendant in the above-captioned matters. For the reasons set forth below, the Motions are denied.

3

## II.    BACKGROUND

These lawsuits arise out of Defendants' sale of allegedly defective mortgage loans to Plaintiff Residential Funding, LLC ("RFC").  (First Am. Compl. ¶ 1.)[1]  Prior to May 2012, RFC was "in the business of acquiring and securitizing residential mortgage loans."  (Id. ¶ 2.)  RFC acquired the loans from "'correspondent lenders,'" such as Defendants, who were responsible for collecting and verifying information from the borrower and underwriting the loans.  (Id. ¶¶ 3, 20.)[2]

As alleged in the First Amended Complaints, RFC's relationship with each Defendant was governed by a Seller Contract that incorporated the terms and conditions of the RFC Client Guide (collectively, "the Agreements").  (Id. ¶¶ 17–18 & Exs. A, B.)[3] Those Agreements, or excerpts thereof, are attached to the First Amended Complaints as Exhibits A and B, respectively.  Pursuant to the Agreements, Defendants made many representations and warranties regarding the loans, including:  (1) Defendants' origination and servicing of the loans was "legal, proper, prudent and customary"; (2) Defendants

---

[1]    There is a separate First Amended Complaint in each of the six cases that are the subject of this Memorandum Opinion and Order.  (See Case No. 13-cv-3451, Doc. No. 39; Case No. 13-cv-3453, Doc. No. 38; Case No. 13-cv-3485, Doc. No. 30; Case No. 13-cv-3515, Doc. No. 37; Case No. 13-cv-3519, Doc. No. 36; Case No. 13-cv-3525, Doc. No. 43.) To the extent that the allegations are identical and in the same numbered paragraph in all six complaints, the Court will simply cite to the First Amended Complaint in RFC's lawsuit against Academy Mortgage Corporation (Case No. 13-cv-3451, Doc. No. 39). However, the Court will note if the information is contained in a different paragraph in one of the other complaints.  For ease of reference, the individual dockets will be referred to by the defendant's name.  Accordingly, Case No. 13-cv-3451 will be referred to as "Academy," Case No. 13-cv-3453 as "First California," Case No. 13-cv-3485 as "Provident," Case No. 13-cv-3515 as "T.J. Financial," Case No. 13-cv-3519 as "Universal," and Case No. 13-cv-3525 as "Wells Fargo."

[2]    (See First California, Doc. No. 38, ¶¶ 3, 19.)

would "promptly notify" RFC of any material acts or omissions regarding the loans; (3) all

loan-related information that Defendants provided to RFC was "true, complete and

accurate"; (4) all loan documents were "genuine" and "in recordable form"; (5) all loan

documents were in compliance with local and state laws; (6) there was "no default, breach,

violation or event of acceleration" under any note transferred to RFC; (7) each loan was

"originated, closed, and transferred" in compliance with all applicable laws; (8) none of the

loans were "high-cost" or "high-risk"; (9) there were no existing circumstances that could

render the loans an "unacceptable investment," cause the loans to become "delinquent," or

"adversely affect" the value of the loans; (10) the loans were underwritten in compliance

with the Client Guide; (11) appropriate appraisals were conducted when necessary; (12) the

market value of the premises was at least equal to the appraised value stated on the loan

appraisals; and (13) there was no fraud or misrepresentation by the borrower or Defendants

regarding the origination or underwriting of the loans.  (Id. ¶ 24.)[4]  RFC considered these

representations and warranties to be material, and any failure to comply constituted an

"Event of Default" under the Agreements.  (Id. ¶¶ 25–26.)[5]  RFC retained sole discretion to

declare an Event of Default, and the available remedies include repurchase of the defective

loan, substitution of another loan, or indemnification against liabilities resulting from the

breach.  (Id. ¶¶ 29–33.)[6]  The Agreements do not, however, require that RFC provide

---

[3]     (See First California, Doc. No. 38, ¶¶ 16–17.)
[4]     (See First California, Doc. No. 38, ¶ 23.)
[5]     (See First California, Doc. No. 38, ¶¶ 24–25.)
[6]     (See First California, Doc. No. 38, ¶¶ 28–32.)

Defendants with notice or an opportunity to cure, or demand repurchase within a particular amount of time.  (Id.)

RFC alleges that, pursuant to these Agreements, it purchased:  (1) over 600 mortgage loans, with an original principal balance exceeding $77 million, from Defendant Academy Mortgage Corporation ("Academy"); (2) over 300 mortgage loans, with an original principal balance exceeding $125 million, from Defendant First California Mortgage Company ("First California"); (3) over 6,900 mortgage loans, with an original principal balance exceeding $2.6 billion, from Defendant Provident Funding Associates, L.P. ("Provident"); (4) over 600 mortgage loans, with an original principal balance exceeding $227 million, from Defendant T.J. Financial, Inc. ("T.J. Financial"); (5) over 3,000 mortgage loans, with an original principal balance exceeding $800 million, from Defendant Universal American Mortgage Company, LLC ("Universal"); and (6) over 3,700 mortgage loans, with an original principal balance exceeding $155 million, from Defendant Wells Fargo Financial Retail Credit, Inc. f/k/a Norwest Financial Acceptance, Inc. ("Wells Fargo").  (Id. ¶¶ 4, 17.)[7]  RFC then either pooled those loans to sell into residential mortgage-backed securitization ("RMBS") trusts or sold them to whole loan purchasers.  (Id. ¶¶ 3, 36.)[8]  A list of the loans sold to RFC by each Defendant and securitized is attached to the respective First Amended Complaints as Exhibit C.

---

[7]    (See First California, Doc. No. 38, ¶¶ 4, 16.)
[8]    (See First California, Doc. No. 38, ¶¶ 3, 38.)

In passing on its own representations and warranties to its buyers, RFC relied on the information provided to it by Defendants.  (Id. ¶ 37.)[9]  However, RFC alleges that, in many instances, Defendants violated their representations and warranties.  (Id.)  According to RFC, many of the loans eventually defaulted or became delinquent and sustained millions of dollars in losses.  (Id. ¶ 39.)[10]  After conducting an internal review, RFC determined that hundreds of loans sold by each Defendant violated the Agreements and resulted in an Event of Default.  (Id. ¶ 41.)[11]  The types of defects included income and employment misrepresentation, owner occupancy misrepresentation, appraisal misrepresentations or inaccuracies, undisclosed debt, insufficient credit scores, lien position, and/or missing or inaccurate documents, among others.  (Id. ¶ 42.)[12]

RFC alleges that it has incurred liabilities and losses resulting from Defendants' defective loans and litigation regarding the quality of those loans.  (See id. ¶¶ 46–60.)[13] Beginning in 2008, RFC faced claims and lawsuits resulting from defective loans it had

---

[9]    (See First California, Doc. No. 38, ¶ 35.)
[10]   (See First California, Doc. No. 38, ¶ 46; Provident, Doc. No. 30, ¶ 48; Universal, Doc. No. 36, ¶ 48.)
[11]   (See First California, Doc. No. 38, ¶ 48; Provident, Doc. No. 30, ¶ 50; Universal, Doc. No. 36, ¶ 50.)
[12]   (See First California, Doc. No. 38, ¶ 49; Provident, Doc. No. 30, ¶ 51; Universal, Doc. No. 36, ¶ 51.)  In the First Amended Complaints, RFC identifies, "by way of example," five specific loans sold by Academy, two specific loans sold by First California, nine specific loans sold by Provident, two specific loans sold by T.J. Financial, five specific loans sold by Universal, and four specific loans sold by Wells Fargo that violated the Agreements' representations and warranties.  (See Academy, Doc. No. 39, ¶ 43; First California, Doc. No. 38, ¶ 50; Provident, Doc. No. 30, ¶ 52; T.J. Financial, Doc. No. 37, ¶ 43; Universal, Doc. No. 36, ¶ 52; Wells Fargo, Doc. No. 43, ¶ 43.)
[13]   (See First California, Doc. No. 38, ¶¶ 53–75; Provident, Doc. No. 30, ¶¶ 55–70; T.J. Financial, Doc. No. 37, ¶¶ 46–71; Universal, Doc. No. 36, ¶¶ 55–77; Wells Fargo, Doc. No. 43, ¶¶ 46–58.)

purchased from Defendants, (id. ¶ 49),[14] and by May 2012, RFC had spent millions of

dollars repurchasing defective loans, including loans sold to it by Defendants, (id. ¶ 61).[15]

And, on May 14, 2012, RFC filed for Chapter 11 bankruptcy in the Bankruptcy Court for

the Southern District of New York.  (Id. ¶ 62[16]; In re Residential Capital, LLC, Case No.

12-12020 (MG) (Bankr. S.D.N.Y.).)  According to RFC, hundreds of proofs of claim related

to allegedly defective mortgage loans, including those sold to RFC by Defendants, were

filed in connection with the bankruptcy proceedings.  (First Am. Compl. ¶ 63.)[17]  The

Bankruptcy Court eventually approved a global settlement that provided for resolution of

the RMBS-related liabilities for more than $10 billion.  (Id. ¶ 67.)[18]  The Bankruptcy Court

confirmed the Chapter 11 Plan on December 11, 2013, and the Plan became effective on

December 17, 2013.  (Id.; Findings of Fact at 1, In re Residential Capital, LLC, Case No.

12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Doc. No. 6066).)  Under the Plan, the

ResCap Liquidating Trust succeeded to RFC's rights and interests, including its claims

against Defendants.  (First Am. Compl. ¶ 67.)[19]

---

[14]     (See First California, Doc. No. 38, ¶ 56; Provident, Doc. No. 30, ¶ 58; T.J. Financial, Doc. No. 37, ¶ 49; Universal, Doc. No. 36, ¶ 58; Wells Fargo, Doc. No. 43, ¶ 49.)

[15]     (See First California, Doc. No. 38, ¶ 76; Provident, Doc. No. 30, ¶ 71; T.J. Financial, Doc. No. 37, ¶ 72; Universal, Doc. No. 36, ¶ 78; Wells Fargo, Doc. No. 43, ¶ 59.)

[16]     (See First California, Doc. No. 38, ¶ 77; Provident, Doc. No. 30, ¶ 72; T.J. Financial, Doc. No. 37, ¶ 73; Universal, Doc. No. 36, ¶ 79; Wells Fargo, Doc. No. 43, ¶ 60.)

[17]     (See First California, Doc. No. 38, ¶ 78; Provident, Doc. No. 30, ¶ 73; T.J. Financial, Doc. No. 37, ¶ 74; Universal, Doc. No. 36, ¶ 80; Wells Fargo, Doc. No. 43, ¶ 61.)

[18]     (See First California, Doc. No. 38, ¶ 82; Provident, Doc. No. 30, ¶ 77; T.J. Financial, Doc. No. 37, ¶ 78; Universal, Doc. No. 36, ¶ 84; Wells Fargo, Doc. No. 43, ¶ 65.)

[19]     (See First California, Doc. No. 38, ¶ 82; Provident, Doc. No. 30, ¶ 77; T.J. Financial, Doc. No. 37, ¶ 78; Universal, Doc. No. 36, ¶ 84; Wells Fargo, Doc. No. 43, ¶ 65.)

RFC alleges that Defendants are obligated, pursuant to the Agreements, to compensate RFC for the portion of the global settlement, and other losses, related to Defendants' breaches of representations and warranties.  (Id. ¶ 68.)[20]  Accordingly, RFC filed these lawsuits between December 12 and 15, 2013, asserting two causes of action against each Defendant.  In Count One, a claim for breach of representation and warranty,[21] RFC alleges that, although it "complied with all conditions precedent, if any, and all of its

---

[20]    (See First California, Doc. No. 38, ¶ 83; Provident, Doc. No. 30, ¶ 78; T.J. Financial, Doc. No. 37, ¶ 79; Universal, Doc. No. 36, ¶ 85; Wells Fargo, Doc. No. 43, ¶ 66.)

[21]    Although Count One is labeled "Breach of Contract," RFC asserts that it actually states a claim for "breach of representation and warranty."  (See Pl.'s Mem. of Law in Opp. to Def. Academy's Mot. to Dismiss the First Am. Compl. [Doc. No. 48] ("RFC's Opp. to Academy"), at 10; Pl.'s Mem. of Law in Opp. to Def. First California's Mot. to Dismiss the First Am. Compl. [Doc. No. 49] ("RFC's Opp. to First California"), at 10; Pl.'s Mem. of Law in Opp. to Def. Provident's Mot. to Dismiss the First Am. Compl. [Doc. No. 43] ("RFC's Opp. to Provident"), at 11; Pl.'s Mem. in Opp. to Def. T.J. Financial's Mot. to Dismiss the First Am. Compl. [Doc. No. 52] ("RFC's Opp. to T.J. Financial"), at 24; Pl.'s Mem. in Opp. to Def. Universal's Mot. to Dismiss the First Am. Compl. [Doc. No. 51] ("RFC's Opp. to Universal"), at 25; Pl.'s Mem. of Law in Opp. to Def. Wells Fargo's Mot. to Dismiss the First Am. Compl. [Doc. No. 64] ("RFC's Opp. to Wells Fargo"), at 9.)  Because the substance of the First Amended Complaints indicates that RFC intended to bring a breach of representation and warranty claim—e.g., RFC alleges in Count One that Defendants "made representations and warranties to RFC regarding the quality and characteristics of the mortgage loans Defendant[s] sold to RFC," and that "Defendant[s] materially breached [their] representations and warranties to RFC inasmuch as the mortgage loans materially did not comply with the representations and warranties,"—the Court will construe Count One accordingly.  See Malone v. Husker Auto Grp., Inc., No. 4:08CV3199, 2008 WL 5273670, at *4 (D. Neb. Dec. 17, 2008) (quoting Johnson v. United States, 547 F.2d 688, 691 (D.C. Cir. 1976)) ("'[T]he label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.'"); Bandy v. Fifth Third Bank, 519 F. App'x 900, 902 (6th Cir. 2013) (stating that the court should look beyond the label to the substance of the complaint when construing the claims); see also Residential Funding Co. v. Americash, Civ. No. 13-3460 (DSD/JJG), 2014 WL 3577312, at *2 n.2) (D. Minn. July 21, 2014) (looking to the substance of RFC's complaint in a similar case and determining that RFC had asserted a claim for breach of warranty rather than for breach of contract, as the claim was labeled).

obligations under the Agreement[s]," (id. ¶ 72),[22] Defendants materially breached the

representations and warranties they made to RFC because the mortgage loans they sold to

RFC did not comply with those representations and warranties, (id. ¶¶ 71, 73).[23]  RFC

asserts that these material breaches constitute Events of Default under the Agreements and

have resulted in losses and liabilities related to the defective loans, as well as losses

associated with defending the lawsuits and proofs of claim that stem from those loans.  (Id.

¶¶ 74–75.)[24]  In Count Two, RFC alleges that it is entitled to indemnification from

Defendants for those losses and liabilities.  (Id. ¶¶ 77–80.)[25]

Defendants each filed a motion to dismiss Plaintiff's First Amended Complaint,

arguing that RFC has insufficiently pleaded its claims.  Defendants Academy, First

California, T.J. Financial, and Universal also assert that RFC lacks standing to bring its

claims.[26]  And, Defendants Academy, First California, Provident, T.J. Financial, and

Universal argue that at least some of RFC's claims are time-barred.[27]  Because the motions

---

[22]     (See First California, Doc. No. 38, ¶ 87; Provident, Doc. No. 30, ¶ 82; T.J. Financial, Doc. No. 37, ¶ 83; Universal, Doc. No. 36, ¶ 89; Wells Fargo, Doc. No. 43, ¶ 70.)

[23]     (See First California, Doc. No. 38, ¶¶ 86, 88; Provident, Doc. No. 30, ¶¶ 81, 83; T.J. Financial, Doc. No. 37, ¶¶ 82, 84; Universal, Doc. No. 36, ¶¶ 88, 90; Wells Fargo, Doc. No. 43, ¶¶ 69, 71.)

[24]     (See First California, Doc. No. 38, ¶¶ 89–90; Provident, Doc. No. 30, ¶¶ 84–85; T.J. Financial, Doc. No. 37, ¶¶ 85–86; Universal, Doc. No. 36, ¶¶ 91–92; Wells Fargo, Doc. No. 43, ¶¶ 72–73.)

[25]     (See First California, Doc. No. 38, ¶¶ 92–95; Provident, Doc. No. 30, ¶¶ 87–90; T.J. Financial, Doc. No. 37, ¶¶ 88–91; Universal, Doc. No. 36, ¶¶ 94–97; Wells Fargo, Doc. No. 43, ¶¶ 75–78.)

[26]     First California raises this argument for the first time in its reply brief.  The Court need not address whether that was permissible because the argument fails for the reasons discussed herein.

[27]     Defendants had also each filed a motion to dismiss the original Complaint in their respective matters.  Provident, T.J. Financial, and Universal have not withdrawn those

raise substantially similar issues, they were consolidated for oral argument, and the matter was heard on June 5, 2014.

## III.   DISCUSSION

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  See Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).[28]

---

motions.  (See Case No. 13-cv-3485, Doc. No. 19; Case No. 13-cv-3515, Doc. No. 29; Case No. 13-cv-3519, Doc. No. 29.)  However, because an amended complaint supersedes the original complaint such that the original complaint is without legal effect, the Court will deny those motions as moot.  See In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citation omitted).

[28]   As noted above, several exhibits were attached to the First Amended Complaint in each matter:  the Seller Contract entered into with the relevant Defendant (Exhibit A), excerpts of the Client Guide (Exhibit B), and a "preliminary list" of the loans sold by the relevant Defendant to RFC pursuant to the Agreements and subsequently securitized by RFC (Exhibit C).  The Court may properly consider these documents because they are

## A.    Standing

The Court will first address the argument that RFC lacks standing to bring its claims because, "[i]f a plaintiff lacks standing, a court is without subject matter jurisdiction." S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 591 (8th Cir. 2003) (citation omitted).  As noted above, four Defendants challenge RFC's standing. Academy and First California argue that RFC has failed to adequately allege that it suffered an injury and that any injury suffered was caused by them.[29]  (See Mem. of Law in Supp. of Def. Academy's Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 43] ("Academy's Mem."), at 7–10; First California's Reply Mem. in Supp. of Its Mot. to Dismiss [Doc. No. 50] ("First California's Reply"), at 10–13.)  In addition, T.J. Financial, Universal, and Academy argue that RFC lacks standing because it assigned away its rights to bring claims based on the loans.  (See Def. T.J. Financial's Mem. of Law in Supp. of Its Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 47] ("T.J. Financial's Mem."), at 13–14; Def. Universal's Mem. of Law in Supp. of Its Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 46] ("Universal's Mem."), at 12–14; Academy's Mem., at 8.)  At least at this stage of the litigation, however, the Court finds that RFC has adequately alleged both an injury in fact and causation, as well as a right to assert the claims stated in the First Amended Complaint.  Therefore, Defendants' motions to dismiss for lack of standing are denied.

---

necessarily embraced by the pleadings.

[29]    In the alternative, Academy argues that RFC's claim of damages exceeding $75,000 has no factual basis because RFC makes no loan-specific allegations and, accordingly, cannot support diversity jurisdiction.  As discussed in more detail below,

### 1.   Injury and Causation

For a plaintiff to have standing:

> (1) there must be "injury in fact" or the threat of "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to defendant's challenged action; and (3) it must be likely (as opposed to merely speculative) that a favorable judicial decision will prevent or redress the injury.

Gray v. City of Valley Park, 567 F.3d 976, 984 (8th Cir. 2009) (citations omitted).

However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). This is because, "on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (quoting Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 889 (1990)).

Defendants Academy and First California argue, first, that RFC fails to describe any specific damages in the First Amended Complaints and, accordingly, the only injury referenced is "conjectural" or "hypothetical." (Academy's Mem., at 7; First California's Reply, at 11.) Next, those Defendants assert that RFC has failed to allege that it—and not a third party—caused RFC to sustain damages. (See Academy's Mem., at 8–10; First California's Reply, at 12–13.) More specifically, Academy contends that RFC does not claim to have been injured by any of Academy's loans mentioned in the First Amended Complaint or in the list of loans attached thereto, and that RFC's allegations that the lawsuits brought against it "stem" from Academy "and others" are insufficient because

RFC was not required to make loan-specific allegations. Therefore, this argument fails.

they show that the alleged injury was caused by a third party.  (<u>See</u> Academy's Mem., at 8–9.)  First California asserts that allegations that litigation arose from securitized trusts "containing" loans purchased from First California are insufficient to establish a causal connection between First California's loans and any injury suffered by RFC.  (<u>See</u> First California's Reply, at 12–13.)

RFC, on the other hand, argues that it has made detailed factual allegations regarding the injuries and damages it has suffered, and the causal connection between those injuries and Defendants' conduct.  (<u>See</u> Pl.'s Mem. of Law in Opp. to Def. Academy's Mot. to Dismiss the First Am. Compl. [Doc. No. 48] ("RFC's Opp. to Academy"), at 15.)  Specifically, RFC contends that its allegations of the following facts are sufficient to establish standing at this stage of the litigation:

> Academy Mortgage made numerous material representations and warranties to RFC concerning the loans Academy Mortgage sold to RFC; Academy Mortgage contractually agreed to various remedies for any breach of its representations and warranties, including broad indemnification provisions; Academy Mortgage's loans in fact contained numerous breaches of the representations and warranties traceable to those loans; and RFC has been damaged as a result of Academy Mortgage's breaches.

(<u>Id.</u> at 18.)[30]

The Court agrees with RFC.  RFC alleged that Defendants Academy and First California sold over 600 and 300 mortgage loans, respectively, to RFC; that the parties' relationship was governed by the Agreements, under which Defendants made numerous

---

[30]     Because standing was not raised in First California's moving brief, RFC did not address the issue in its brief opposing First California's motion.

representations and warranties regarding the origination, servicing, and quality of the loans; that Defendants delivered loans that contained defects that violated those representations and warranties; that many of the loans eventually sustained losses and exposed RFC to claims from other parties; and that, as a result of Defendants' breaches, RFC incurred obligations and losses, such as repurchasing numerous defective loans that were originally sold to it by Defendants, defending the quality of the loans sold to it by Defendants in federal and state court litigation, and settling proofs of claim seeking damages stemming from defective loans, including those sold to RFC by Defendants. These general allegations of injury are sufficient at the pleading stage, and RFC has tied that injury to Defendants' allegedly defective loans and alleged breaches of their representations and warranties in the Agreements. The fact that RFC alleged that others also caused it injury does not negate the allegations of injury caused by Defendants. Accordingly, the Court finds that RFC's factual allegations in the First Amended Complaint are sufficient to establish both injury in fact and causation.

### 2.     Assignment

In addition to the elements of standing discussed above, "a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Iowa ex rel. Miller v. Block, 771 F.2d 347, 352 (8th Cir. 1985) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). "[I]n the context of standing, it is the nonfrivolous claims of a party that are determinative, not whether the party can sustain those claims by proof on the merits." City of St. Louis v. Dep't of Transp., 936 F.2d 1528, 1532 (8th Cir. 1991).

Defendants T.J. Financial and Universal argue that RFC lacks standing to bring its claims because it assigned away its rights when it sold the loans into securitized trusts. (See T.J. Financial's Mem., at 13; Universal's Mem., at 12.)  To support their argument, those Defendants point to language in the publicly-filed purchase and pooling and servicing agreements for the securitizations identified in the First Amended Complaints, which state that RFC assigned away "all . . . right, title and interest" in the loans.  (T.J. Financial's Mem., at 13–14 (citing Kimble Aff., Exs. A–D); Universal's Mem., at 13 (citing Kimble Aff., Exs. A–B).)  Similarly, Academy argues that, because RFC alleged that it sold the loans, but not that it retained its rights in the loans, it has not alleged standing to pursue its claims.  (Academy's Mem., at 8.)  Academy also asserts that RFC lacks standing to pursue the claims of its affiliates who joined in the bankruptcy settlement.  (Id.)

In response, RFC argues that the First Amended Complaints do not allege that RFC assigned away its rights or that it is pursuing its affiliates' claims and that, at any rate, Defendants' assertions are not properly raised in a motion to dismiss because they are factual in nature and are based on securitization documents that are not properly before the Court.  (RFC's Opp. to Academy, at 18 n.7; Pl.'s Mem. in Opp. to Def. T.J. Financial's Mot. to Dismiss the First Am. Compl. [Doc. No. 52] ("RFC's Opp. to T.J. Financial"), at 14; Pl.'s Mem. in Opp. to Def. Universal's Mot. to Dismiss the First. Am. Compl. [Doc. No. 51] ("RFC's Opp. to Universal"), at 14.)  Even if those documents were properly before the Court, RFC contends, the plain language of those documents

demonstrates that RFC did not assign away its claims against Defendants.  (See RFC's

Opp. to T.J. Financial, at 14–21; RFC's Opp. to Universal, at 15–21.)

The Court, again, agrees with RFC.  RFC's First Amended Complaints do allege

that RFC is asserting its own legal rights—namely, its rights to seek remedies for

Defendants' breaches of the representations and warranties they made to RFC in the

Agreements.  While RFC alleges that it pooled the loans it purchased from Defendants

into RMBS trusts or sold them to whole loan purchasers, RFC does not allege that it sold

its rights to bring claims based on breaches of the representations and warranties in the

Agreements.  Similarly, although the First Amended Complaints note that RFC's

affiliates also filed for bankruptcy, RFC alleges only that Defendants must compensate

RFC for the portion of the settlement for which Defendants are responsible.  Accepting

these allegations as true, and construing them in favor of RFC, RFC has alleged that it

has a legal right to sue under the Agreements.  Whether RFC can, in fact, enforce those

Agreements, or whether it has assigned away its rights to do so, goes to the merits of the

claims and is not an issue of standing.  See, e.g., Residential Funding Co., LLC v. Mortg.

Outlet, Inc., No. 13-CV-3447 (PJS/JSM), 2014 WL 4954645, at *7 (D. Minn. Oct. 1,

2014) (stating in a similar case that whether RFC assigned away its rights under its

contracts with the defendants when it sold the loans to third parties "is not an issue of

standing, . . . but rather goes to the merits of RFC's claims").

### B.    Sufficiency of the Pleadings

Defendants also argue that RFC's pleadings are insufficient to state a claim.  Under

Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short

and plain statement of the claim showing that the pleader is entitled to relief." The U.S.

Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), clarified that this Rule does not require that a complaint

contain "detailed factual allegations," but it does require that it contain facts with enough

specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. at

555.  In other words, this standard "calls for enough fact[s] to raise a reasonable expectation

that discovery will reveal evidence of [the claim]." Id. at 556. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Thus, to survive a motion to

dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on

its face." Twombly, 550 U.S. at 570.

    As noted above, RFC alleges claims for breach of representation and warranty in

Count One, and indemnification in Count Two.[31]  The elements of a breach of warranty

claim are:  existence of a warranty, reliance on the warranty, breach of the warranty, and a

causal link between the breach and the alleged harm.[32]  See Hendricks v. Callahan, 972 F.2d

---

[31]    The parties agree that Minnesota law governs RFC's claims.

[32]    Defendants Wells Fargo and First California argue that "manifestation of the
defect" is also a required element of a breach of warranty claim, and that RFC has failed
to allege facts showing that any defects have manifested in the loans at issue.  (See Reply
Mem. in Supp. of Def. Wells Fargo's Mot. to Dismiss the First Am. Compl. [Doc. No.
66] ("Wells Fargo's Reply"), at 4–5; First California's Mem., at 11.)  Even if
"manifestation of the defect" is a required element, Defendants' argument is without
merit.  As discussed in more detail below, RFC has alleged that internal reviews
demonstrated that loans sold to RFC by Defendants violated the representations and
warranties by including income and employment misrepresentations, owner occupancy
misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt,
insufficient credit scores, lien position, and missing or inaccurate documents; and that these

190, 192–94 (8th Cir. 1992) (citing Peterson v. Bendix Home Sys., 318 N.W.2d 50, 52–53

(Minn. 1982); Midland Loan Fin. Co. v. Masden, 14 N.W.2d 475, 481 (Minn. 1944)).

However, "Minnesota law does not require reliance to be pleaded in a contract action based

on an alleged breach of a representation of future legal compliance." Lyon Fin. Servs., Inc.

v. Ill. Paper & Copier Co., 848 N.W.2d 539, 544 (Minn. 2014).[33]  As for the second claim,

"[i]ndemnity . . . arises out of a contractual relationship, either express or implied by law,

which 'requires one party to reimburse the other entirely.'" Blomgren v. Marshall Mgmt.

Servs., Inc., 483 N.W.2d 504, 506 (Minn. Ct. App. 1992) (quoting Hendrickson v. Minn.

Power & Light Co., 104 N.W.2d 843, 847 (Minn. 1960)).  Thus, "[a] claimant may recover

indemnity . . . '[w]here there is an express contract between the parties containing an

explicit undertaking to reimburse for liability of the character involved.'" Id. (quoting

Hendrickson, 104 N.W.2d at 848).

     Defendants make two main arguments regarding the insufficiency of RFC's First

Amended Complaints in regard to both causes of action:  (1) RFC's allegations do not

contain the requisite specificity, and (2) RFC does not allege the necessary elements of

satisfaction of conditions precedent and materiality.  Because the Court finds that RFC has

adequately stated its claims for breach of representation and warranty and indemnification,

Defendants' motions to dismiss for insufficient pleading are denied.

---

defects resulted in claims and lawsuits against RFC, required RFC to repurchase loans, and
ultimately contributed to forcing RFC into bankruptcy.  (See infra at 24–25.)  Therefore,
RFC has adequately alleged manifestation of the defect.

[33]    In making this determination, the Minnesota Supreme Court declined to reach the
issue of the continued validity of the reliance requirement in a breach of warranty claim.
Lyon Fin. Servs., Inc., 848 N.W.2d at 544 n.6.

### 1.    Specificity

Each Defendant in the present matters contends that RFC's First Amended Complaint fails to satisfy the standards enunciated in Rule 8, Iqbal, and Twombly because RFC did not identify the specific loans that form the basis of its claims, which specific representations and warranties were breached as to each of those loans, and how those representations and warranties were breached as to each loan.  (See Academy's Mem., at 11, 13; Def. First California's Mem. of Law in Supp. of Its Mot. to Dismiss [Doc. No. 43] ("First California's Mem."), at 10; Mem. of Law in Supp. of Def. Provident's Mot. to Dismiss First Am. Compl. [Doc. No. 38] ("Provident's Mem."), at 12–16 ; T.J. Financial's Mem., at 6–11; Universal's Mem., at 6–11; Mem. in Supp. of Def. Wells Fargo's Mot. to Dismiss the First Am. Compl. [Doc. No. 58] ("Wells Fargo's Mem."), at 18–24.)  Defendants rely primarily on Motley v. Homecomings Financial, LLC, 557 F. Supp. 2d 1005 (D. Minn. 2008), Torchlight Loan Services, LLC v. Column Financial, Inc., No. 11 Civ. 7426 (RWS), 2012 WL 3065929 (S.D.N.Y. July 25, 2012), and Wells Fargo Bank, N.A. v. LaSalle Bank N.A., No. 11 C 2884, 2011 WL 4837493 (N.D. Ill. Oct. 11, 2011), to support these arguments.  (See, e.g., Provident's Mem., at 10, 16; Reply Mem. of Law in Supp. of Def. Provident's Mot. to Dismiss First Am. Compl. [Doc. No. 46] ("Provident's Reply"), at 10; T.J. Financial's Mem., at 7–10.)  In addition, Defendants argue that RFC does not identify the damages that are allegedly attributable to each Defendant's loans or how each Defendant's actions led to those losses.  (See Academy's Mem., at 12; First California's Mem., at 11–13; Provident's Mem., at 16–17; Def. T.J. Financial's Reply Mem. of Law in Supp. of Its Mot. to Dismiss Pl.'s First Am.

Compl. [Doc. No. 56] ("T.J. Financial's Reply"), at 15; Def. Universal's Reply Mem. of

Law in Supp. of Its Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 55] ("Universal's

Reply"), at 15–16; Wells Fargo's Mem., at 25–28.)

RFC, relying primarily on <u>Ace Securities Corp. Home Equity Loan Trust v. DB</u>

<u>Structured Products, Inc.</u>, 5 F. Supp. 3d 543 (S.D.N.Y. 2014), argues that it is not

required by Rule 8 or by the courts to set forth loan-specific allegations. (<u>See, e.g.</u>,

RFC's Opp. to Academy, at 19–23.) According to RFC, its allegations are "more than

sufficient to establish a plausible claim." (<u>Id.</u> at 21; <u>see id.</u> at 10–15 (discussing RFC's

allegations in support of the elements of its breach of representation and warranty and

indemnification claims); Pl.'s Mem. of Law in Opp. to Def. First California's Mot. to

Dismiss the First Am. Compl. [Doc. No. 49] ("RFC's Opp. to First California"), at 10–

12, 15–18 (same); Pl.'s Mem. of Law in Opp. to Def. Provident's Mot. to Dismiss the

First Am. Compl. [Doc. No. 43] ("RFC's Opp. to Provident"), at 10–15 (same); RFC's

Opp. to T.J. Financial, at 24–31 (same); RFC's Opp. to Universal, at 25–32 (same); Pl.'s

Mem. in Opp. to Def. Wells Fargo's Mot. to Dismiss the First Am. Compl. [Doc. No. 64]

("RFC's Opp. to Wells Fargo"), at 9–15 (same).)

The Court finds that RFC was not required to make loan-specific allegations to

support its claims. First, as discussed above, Rule 8 requires that a complaint contain "a

short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and <u>Iqbal</u> and <u>Twombly</u> did

not abrogate this standard, <u>Hamilton v. Palm</u>, 621 F.3d 816, 817 (8th Cir. 2010). Rather, the

Supreme Court specifically stated in those cases that Rule 8 does <u>not</u> require "detailed

factual allegations," but only facts with enough specificity "to raise a right to relief above

the speculative level." <u>Twombly</u>, 550 U.S. at 555. Accordingly, as noted by another judge

in this District, "[Rule 8] is both a floor and a ceiling: [it] can be violated by a complaint

that pleads too little and by a complaint that pleads too much." <u>Wright v. Medtronic, Inc.</u>,

No. 09-CV-0443 (PJS/AJB), 2010 WL 1027808, at *13 (D. Minn. Mar. 17, 2010). Use of

loan-specific allegations in cases like the present would result in complaints that are

hundreds of pages long, and would fall into the latter category.[34] <u>See Residential Funding</u>

<u>Co., LLC v. Broadview Mortg. Corp.</u>, Civ. No. 13-3463 (ADM/SER), 2014 WL 4104819,

at *5 (D. Minn. Aug. 19, 2014); Order at 4–5, <u>Residential Funding Co., LLC v. First Mortg.</u>

<u>Corp.</u>, Civ. No. 13-3490 (RHK/FLN) (D. Minn. Aug. 1, 2014) (Doc. No. 48) (citing

<u>Residential Funding Co., LLC v. Mortg. Outlet, Inc.</u>, Civ. No. 13-3447, June 16, 2014 Hr'g

Tr. 74–75 (Doc. No. 51)).

     Second, the case law favors RFC's position. For example, the U.S. District Court for

the Southern District of New York recently held in <u>Ace Securities Corp.</u> that the plaintiff's

allegations, which "[did] not furnish a basis for determining which specific breaches [the

defendant] actually discovered, and therefore which loans it was obligated to repurchase,"

were sufficient to meet federal pleading standards because "a complaint for repurchase need

not contain specific allegations regarding each loan at issue." 5 F. Supp. 3d at 560 (citations

and internal quotation marks omitted). More importantly, most of the judges in this District

who have considered this exact issue have found that RFC was not required to make loan-

---

[34]    The list of loans that RFC purchased from each Defendant and securitized, which
is attached as Exhibit C to each of the First Amended Complaints, itself runs anywhere
from 7 to 151 pages.

specific allegations in its complaints in order to satisfy Rule 8.  See Residential Funding

Co., LLC v. Cmty. W. Bank, N.A., Civ. No. 13-3468 (JRT/JJK), 2014 WL 5207485, at *14

(D. Minn. Oct. 14, 2014); Mortg. Outlet, Inc., 2014 WL 4954645, at *2; Broadview Mortg.

Corp., 2014 WL 4104819, at *5; Residential Funding Co., LLC v. Gateway Bank, F.S.B.,

Civ. No. 13-3518 (MJD/JSM), 2014 WL 3952321, at *10 (D. Minn. Aug. 13, 2014)

(adopting the Magistrate Judge's Report and Recommendation); Order at 4–5, First Mortg.

Corp., Civ. No. 13-3490 (RHK/FLN) (D. Minn. Aug. 1, 2014) (Doc. No. 48); Residential

Funding Co., LLC v. Mortg. Access Corp., Civ. No. 13-3499 (DSD/FLN), 2014 WL

3577403, at *3 (D. Minn. July 21, 2014).  But see Residential Funding Co., LLC v.

Embrace Home Loans, Inc., ___ F. Supp. 2d ___, Civ. No. 13-3457 (PAM/FLN), 2014 WL

2766114, at *4–6 (D. Minn. June 18, 2014).  As noted by one of those judges, "[r]equiring

such specificity in cases involving hundreds or thousands of loans contravenes the

requirement of pleading a 'short and plain statement' of claims."  Broadview Mortg. Corp.,

2014 WL 4104819, at *5 (quoting Fed. R. Civ. P. 8(a)(2)).

        The cases cited by Defendants are not to the contrary.  For example, the court in

Motley dismissed the plaintiffs' breach of contract claim under Rule 12(b)(6) because the

plaintiffs did not attach the contracts at issue to the complaint or plead the terms of the

contracts, "rendering it impossible to discern precisely how [the defendant] allegedly . . .

breached them."  557 F. Supp. 2d at 1013.  And, in LaSalle Bank, the court dismissed two

breach of warranty claims where the plaintiff failed to allege how the warranties were

breached, but it denied the motion to dismiss a third breach of warranty claim where the

plaintiff did allege the ways in which the defendant had breached the warranty.  2011 WL

4837493, at *3.  Importantly, the court did not hold in either of those cases that loan-specific

allegations are necessary for a complaint to survive a motion to dismiss.  Torchlight is

inapposite because it involved only a single loan.  See 2012 WL 3065929, at *1.

　　　　Third, RFC's allegations in the First Amended Complaints do address all of the

elements of its claims with the requisite specificity and provide fair notice of those claims to

Defendants.  As for RFC's breach of representation and warranty claim, RFC has alleged

the existence of a warranty (e.g., the parties' relationships were governed by the

Agreements, relevant excerpts of which are attached to the First Amended Complaints[35] and

which detail the various representations and warranties made by Defendants)[36]; reliance on

---

[35]　　　Several Defendants also argue that RFC's claims fail because RFC did not identify
the specific contracts governing its relationship with each Defendant, RFC only attached
excerpts of the Client Guide, and the excerpts of the Client Guide do not represent all of
the versions of the Client Guide that were issued over the years.  (See Reply in Supp. of
Def. Academy's Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 49], at 10; Provident's
Mem., at 10–12; T.J. Financial's Mem., at 10–12; Universal's Mem., at 11.)  However, as
RFC notes in opposition, RFC alleged that its relationship with each Defendant was
governed by the Agreements attached as Exhibits A and B to the First Amended
Complaints.  In addition, RFC alleged that "[t]he complete versions of the Client Guide
are known to the parties and [are] too voluminous to attach in their entirety," and that the
omitted portions are not relevant to the allegations in the First Amended Complaint.
(First Am. Compl. ¶ 18.)  Assuming these facts to be true, and construing all reasonable
inferences in favor of RFC, the Court finds that RFC has sufficiently identified the
contractual provisions upon which it is basing its claims.

[36]　　　Defendant Wells Fargo argues that RFC's claims against it fail because RFC has
not plausibly alleged that its contracts with Wells Fargo included the representations,
warranties, and indemnification provisions upon which RFC is suing.  (See Wells Fargo's
Mem., at 15–18.)  Rather, Wells Fargo asserts that its Seller Contracts did not incorporate
the terms of the Client Guides, but instead incorporated the "AlterNet Seller Guide," and
thus Wells Fargo was not subject to the Client Guide.  (See id.)  However, as RFC points
out, its First Amended Complaint against Wells Fargo alleges:  "Under the [Seller]
Contract, Wells Fargo Financial was authorized to sell loans under RFC's 'Alternet

the warranty (e.g., that RFC relied on the information that was the subject of the representations and warranties when it made its own representations and warranties to its buyers); a breach (e.g., that internal reviews demonstrated that many of the loans sold to RFC by Defendants violated the representations and warranties by including income and employment misrepresentations, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, insufficient credit scores, lien position, and missing or inaccurate documents); and a causal link between the breach and the alleged harm (e.g., RFC faced claims and lawsuits resulting from the defective loans sold to it by Defendants, RFC repurchased defective loans sold to it by Defendants, and RFC ultimately entered into a $10 billion-plus settlement of its RMBS-related liabilities).  As for RFC's indemnification claim, RFC has alleged the existence of an express contract between the parties undertaking to reimburse RFC for liabilities resulting from breaches of the representations and warranties (i.e., the Agreements).[37]  And, as discussed above, RFC has

---

Program,' a program under the Client Guide for purchase of non-conforming loans.  The Contract incorporated into its terms and conditions the RFC Client Guide . . . . The Contract and Client Guide collectively form the parties' Agreement, and set the standards to which Wells Fargo Financial's loans sold to RFC were expected to adhere."  (Wells Fargo, Doc. No. 43, ¶ 18.)  Moreover, RFC argues that "the fact that the Alternet Program applied to the agreement between RFC and [Wells Fargo] did not negate or invalidate the representations and warranties set forth in the Client Guide."  (RFC's Opp. to Wells Fargo, at 14.)  Because RFC has plainly alleged that the representations and warranties in the Client Guide applied to Wells Fargo, and because it is not clear from the pleadings or the attachments to the pleadings that those allegations are false, RFC has sufficiently alleged that its contracts with Wells Fargo included the representations, warranties, and indemnification provisions upon which it is suing Wells Fargo.

[37]     Defendant Provident makes a conclusory argument that RFC's indemnification claim fails because RFC did not allege that Provident breached an agreement to indemnify RFC.  (Provident's Mem., at 14.)  However, Provident points to no authority for the proposition that it is necessary to plead a <u>breach</u> of an indemnification agreement

sufficiently alleged that Defendants breached the representations and warranties and, as a result, incurred liabilities.[38]  These allegations provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556. Accordingly, the First Amended Complaints satisfy Rule 8 and the plausibility standard.

### 2.    Conditions Precedent and Materiality

Defendant First California asserts that RFC's claims fail because RFC does not allege that it performed the conditions precedent necessary to maintain its claims. According to First California, performance of conditions precedent is an element of a breach of contract claim, and RFC's allegation that it performed "all conditions precedent" is insufficient to meet its pleading obligations because RFC did not identify the relevant conditions precedent nor allege that it satisfied those specific conditions.  (See First California's Mem., at 6–8.)  Similarly, First California argues that RFC failed to identify the conditions precedent required by the Client Guide for seeking indemnification, or that it satisfied those conditions.  (See id. at 9–10.)[39]  Finally, First California argues that both the Client Guide and Minnesota law require that an alleged breach be "material," and that RFC failed to plead that the breaches of "all of the loans at issue" were material.  (See id. at 8–9.)

---

in order to state a claim for indemnification.

[38]     Academy argues that RFC's indemnification claim should be dismissed to the extent that it is based on RFC's own negligence. (Academy's Mem., at 15.)  However, as RFC notes in opposition, even if this proposition applies, whether RFC was negligent is a fact issue that cannot be resolved at the motion to dismiss stage.  (See RFC's Opp. to Academy, at 15 n.5.)

[39]     Provident also notes in a conclusory statement that RFC's indemnification claim fails because RFC did not allege that RFC requested indemnification from Provident. (See Provident's Mem., at 14.)  The Court construes this statement as an argument that RFC failed to allege the necessary conditions precedent.  As discussed herein, this

In response, RFC argues that performance of conditions precedent is not an element of a breach of representation and warranty claim, a general allegation that all conditions precedent have been met is sufficient, failure to satisfy a condition precedent is an affirmative defense, and the conditions that it allegedly failed to satisfy were not required under the Client Guide.  (See RFC's Opp. to First California, at 13–14.)  In addition, RFC argues that the Client Guide only requires that a breach be "material" if RFC is demanding repurchase of a loan, which it is not.  (See id. at 14 n.5.)

As outlined above, neither satisfaction of conditions precedent nor materiality of the breach is an element of either of RFC's claims.[40]  However, even assuming that those are elements that RFC was required to plead, RFC's allegations are sufficient.  As for conditions precedent, Rule 9 states that, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.  But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."  Fed. R. Civ. P. 9(c).  Therefore, RFC's general allegation that it "complied with all conditions precedent, if any, and all of its obligations under the Agreement" is

---

argument fails.

[40]    First California relies on Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359 (Minn. 2009), for the proposition that satisfaction of conditions precedent is a necessary element to a breach of warranty claim.  (See First California's Reply, at 3–4.) In that case, the court granted summary judgment in favor of the defendant on the plaintiff's breach of warranty claim because the plaintiff terminated the parties' agreement without satisfying the necessary condition precedent.  Valspar Refinish, Inc., 764 N.W.2d at 366.  However, the court did not discuss whether the plaintiff was required to plead satisfaction of the condition precedent in its complaint.  Therefore, the case is inapposite.

adequate.[41]  See, e.g., Cummins Law Office, P.A. v. Norman Graphic Printing Co., 826 F.

Supp. 2d 1127, 1129 (D. Minn. 2011) (finding the plaintiff's allegation that "'[a]ny

conditions precedent to [its] right to demand performance by [the defendant] have been

performed'" to be sufficient under Rule 9); Broadview Mortg. Corp., 2014 WL 4104819, at

*8 (finding RFC's allegations in a similar case that "it performed all of its obligations to

Defendants, and 'all conditions precedent to the relief sought in this action, if any, have

been satisfied,'" to be sufficient at the pleading stage).  As for materiality, RFC alleged that

"Defendant[s] materially breached [their] representations and warranties to RFC inasmuch

as the mortgage loans materially did not comply with the representations and warranties,"

that "Defendant[s'] material breaches constitute Events of Default under the Agreement[s],"

and that "RFC has suffered loss, harm, and financial exposure directly attributable to

Defendant[s'] material breaches."  (E.g., First California, Doc. No. 38, ¶¶ 88–90 (emphases

added).)  Accordingly, RFC has also sufficiently alleged that the breaches were material.

### C.     Statute of Limitations

Finally, each Defendant except Wells Fargo contends that some or all of RFC's

claims for breach of representation and warranty and indemnification are time-barred.  (See

Academy's Mem., at 15; First California's Mem., at 14–17; Provident's Mem., at 17–20;

T.J. Financial's Mem., at 15–17; Universal's Mem., at 14–17.)  "[W]hen it 'appears from

the face of the complaint itself that the limitation period has run,' a limitations defense may

properly be asserted through a Rule 12(b)(6) motion to dismiss."  Varner v. Peterson Farms,

---

[41]     Because the Court agrees that a general allegation of satisfaction of conditions
precedent is sufficient, it will not address RFC's other arguments related to that issue.

371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted).  However, because it does not

appear to the Court from the face of the First Amended Complaints that the limitations

period has necessarily run as to any of the loans at issue, Defendants' motions to dismiss

RFC's claims as time-barred are denied.

### 1.      Breach of representation and warranty claims

Defendants argue that RFC's claims for breach of representation and warranty

accrued on the date that they sold the loans at issue to RFC and, accordingly, Minnesota's

six-year statute of limitations for contract claims bars any claims based on loans sold to

RFC more than six years prior to the filing of the First Amended Complaints.  (See, e.g.,

Academy's Mem., at 15; Provident's Mem., at 18.)  Even if the two-year tolling provision in

the U.S. Bankruptcy Code applies, Defendants assert, all of RFC's claims for breach of

representation and warranty based on loans sold to RFC before May 14, 2006 (i.e., six years

prior to RFC's bankruptcy filing) are time-barred because there is no basis in the First

Amended Complaints for tolling to apply prior to that date.  (See, e.g., Reply in Supp. of

Def. Academy's Mot. to Dismiss Pl.'s First Am. Compl. [Doc. No. 49], at 12; Provident's

Mem., at 19; T.J. Financial's Mem., at 16; Provident's Reply, at 17.)

In response, RFC argues that the statute of limitations on its breach of representation

and warranty claims was tolled by its bankruptcy filing, and so the claims are timely at least

with respect to all loans sold to RFC on or after May 14, 2006.  (See, e.g., RFC's Opp. to

Academy, at 24–25.)  However, RFC does not concede that all loans sold prior to that date

are time-barred, but insists that "the facts and circumstances of each loan" will determine

whether the claims are timely.  (E.g., id. at 25 n.10.)  Therefore, RFC argues, the issue is not

properly decided at the motion to dismiss stage.  (E.g., id.)

The Court finds that, at this stage of the litigation, none of RFC's breach of

representation and warranty claims are properly dismissed as time-barred.  Under § 108(a)

of the Bankruptcy Code, if the statute of limitations governing a debtor's claim has not

expired prior to the filing of the bankruptcy petition, the trustee may commence an action on

that claim before the later of the end of the statutory limitations period or "two years after

the order for relief."  11 U.S.C. § 108(a).  The parties agree that Minnesota has a six-year

statute of limitations for contract claims.  See Minn. Stat. § 541.05, subd. 1(1).  And, here,

the instant actions were filed in December 2013, which is within the two-year period

following the bankruptcy court's order for relief.  Accordingly, because the six-year statute

of limitations had not expired as to loans sold to RFC on or after May 14, 2006 at the time

RFC filed its bankruptcy petition on May 14, 2012, those claims are not time-barred.  See

11 U.S.C. § 1107(a) (stating that "a debtor in possession shall have all the rights . . . and

powers, and shall perform all the functions and duties . . . of a trustee serving in a case under

[Chapter 11]"); Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 278 n.11 (8th Cir.

1983) (citations omitted) ("Although the language of § 108 refers only to the trustee, it is

generally agreed that the debtor-in-possession is also entitled to the statute's privileges.");

Residential Funding Co., LLC v. Wallick & Volk, Inc., Civ. No. 13-3512 (MJD/JJG), 2014

WL 3955257, at *5 (D. Minn. Aug. 13, 2014) (finding that RFC was entitled to invoke

§ 108(a) in a similar case).

Moreover, "[w]here a warranty relates to a future event that will determine whether or not it is breached, the statute does not begin to run until the happening of such future event." City of Pipestone v. Wolverine Ins. Co., Civ. No. 4-84-634, 1985 WL 1845, at *4 (D. Minn. June 28, 1985) (citation omitted). One of the representations and warranties that RFC relies on in the First Amended Complaints as a basis for its claims is that Defendants would notify RFC of any material acts or omissions regarding the loans. Thus, it is plausible from the face of the First Amended Complaints that one of the allegedly breached warranties related to an event that occurred, if at all, after the sale of a loan. In that case, the statute of limitations would not begin to run until some later date and may permit a claim based on a loan sold to RFC prior to May 14, 2006 to proceed. The dates upon which any Defendant allegedly breached that representation and warranty is an issue that goes beyond the pleadings and cannot be resolved at this stage.

### 2. Indemnification claims

Defendants also argue that the statute of limitations on RFC's indemnification claims began to run at the time Defendants sold the loans at issue to RFC because the "gravamen" of the claim is the breach of representations and warranties. (E.g., First California's Reply, at 22; T.J. Financial's Reply, at 7.) RFC, on the other hand, asserts that the statute of limitations on an indemnification claim does not begin to run until the underlying liability is fixed and, accordingly, its indemnification claims did not begin to run until at least December 2013, when the Chapter 11 Plan was confirmed. (See, e.g., RFC's Opp. to Academy, at 25–26.)

The Court finds that RFC's indemnification claims are not time-barred. "Under the common law, the right of indemnity does not accrue until the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it." Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n, 538 N.W.2d 692, 695 (Minn. 1995) (citation and internal quotation marks omitted). Thus, "[t]he statute of limitations in an indemnification case ordinarily is six years after final judgment or settlement." Hernick v. Verhasselt Constr., Inc., No. CX-02-1424, 2003 WL 1814876, at *5 (Minn. Ct. App. Apr. 8, 2003) (citing Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 403 (Minn. 2000)).

RFC's First Amended Complaints state the following in regard to the liabilities and losses for which it seeks indemnification:

> RFC has incurred substantial liabilities, losses and damages arising from and relating to material defects in the mortgage loans [Defendants] sold to RFC, including over $10 billion in allowed claims approved by the United States Bankruptcy Court for the Southern District of New York, as well as tens of millions of dollars in attorneys' fees, litigation-related expenses, and other costs associated with defending dozens of lawsuits and proofs of claim filed against RFC stemming in part from materially defective loans sold to RFC by [Defendants].

(First Am. Compl. ¶ 78.)[42] RFC also notes that it began facing claims and lawsuits stemming from the loans at issue beginning in 2008, and that the bankruptcy Plan was confirmed in December 2013. Accordingly, because it appears from the face of the First Amended Complaints that RFC's liability did not become finally fixed and ascertained until

---

[42] (See First California, Doc. No. 38, ¶ 93; Provident, Doc. No. 30, ¶ 85; T.J. Financial, Doc. No. 37, ¶ 89; Universal, Doc. No. 36, ¶ 95; Wells Fargo, Doc. No. 43, ¶ 76.)

at least sometime after 2008, and because the First Amended Complaints were all filed less

than six years later in December 2013, RFC's indemnification claims are timely.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant Academy Mortgage Corporation's Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3451, Doc. No. 42] is **DENIED**;

2.  Defendant First California Mortgage Company's Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3453, Doc. No. 41] is **DENIED**;

3.  Defendant Provident Funding Associates, L.P.'s Motion to Dismiss [Case No. 13-cv-3485, Doc. No. 19] is **DENIED AS MOOT**,

4.  Defendant Provident Funding Associates, L.P.'s Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3485, Doc. No. 36] is **DENIED**,

5.  Defendant T.J. Financial, Inc.'s Motion to Dismiss [Case No. 13-cv-3515, Doc. No. 29] is **DENIED AS MOOT**,

6.  Defendant T.J. Financial, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3515, Doc. No. 45] is **DENIED**,

7.  Defendant Universal American Mortgage Company, LLC's Motion to Dismiss [Case No. 13-cv-3519, Doc. No. 29] is **DENIED AS MOOT**,

8.  Defendant Universal American Mortgage Company, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3519, Doc. No. 44] is **DENIED**, and

9.  Defendant Wells Fargo Financial Retail Credit, Inc. f/k/a Norwest Financial Acceptance, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint [Case No. 13-cv-3525, Doc. No. 57] is **DENIED**.

Dated:  November 12, 2014         s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge